We're here for a hearing on the case of Antonio Melton v. the Attorney General of the State of Florida. I know we have experienced counsel, so I won't explain the stoplight system to you, and we'll be happy to hear from you, Ms. McDermott. Oh, and by the way, thank you very much. We had a former clerk who was sworn in as a member of the Georgia Legislature this morning at 10 o'clock, and he asked her to be there with him, and so that was the reason for the delay. So thank you. Thank you very much. Good afternoon. May it please the Court, Linda McDermott on behalf of Antonio Melton. We're here on the ineffective assistance of counsel claim, and I want to start by just setting out the context of the case. Terry Terrell, who was the Chief Assistant Public Defender at the time of this case, and then was a judge at the time he testified in post-conviction, he was faced with a case where his client had been charged with a homicide 26 days after he had turned 18. Shortly thereafter, his client was charged with a second homicide that had occurred prior to that case when his client was 17. In that context, he knew that the state was going to be trying to use the first homicide as an aggravator in the capital case. In the capital case, there was only one, arguably one, aggravating circumstances that he was aware the state could establish, which was the pecuniary gain aggravator. So the state obviously wanted to get this conviction so that they could then use it in the capital case. So this is where he is sort of focused when he's preparing the Saylor case, which is the non-capital case, the cab driver case. Now, they're going to go to trial first on the Saylor case, and so he's investigating obviously both cases simultaneously, and there's certainly overlap because the co-defendant in the capital case is also someone who's given information and was allegedly with Mr. Melton on the day of the cab case. So this is where he is. This is where the context of the case is. And so in terms of what he knows and what he does, he learns that Ben Lewis, who's the co-defendant in the capital case, has provided information to law enforcement that Antonio Melton shot. Let me interrupt you a bit. I suspect we all know the facts pretty well on that. I'd like to focus you on what's the key question here, which is, as you well know from your experience, that ineffective assistance of counsel and ineffective performance, it's a very high hurdle of competence. And when you combine that high hurdle with the deference that we give to a deeper review from the state court, we're doubly deferential, and so it's an even higher hill for you to climb. With that in mind and that burden, let me ask you what in all of the things you've written in your brief, what would you identify as the most egregious error or omission you think defense counsel made? Yes. So Judge Turrell, he learned that Ben Lewis had made statements. In the deposition of Detective O'Neill, Detective O'Neill says, I obtained statements from Bruce Frazier that Lewis was talking in the jail cell. He then reveals, Detective O'Neill reveals that according to David Summerlin, as he's identified, we learn later his name is David Sumler, that Lewis has made the statement that he and his partner, and O'Neill specifically says in the deposition, I clarified that, and he did not identify Melton, killed the captain. Is that where you're going with this? My question is first, let's figure out what we're talking about. You're saying that he should have interviewed Sumler. That is the key omission. Right. And so he knew those things. According to the courts that have reviewed this case, he knew those things. And if you find out that Ben Lewis is talking in the jail cell, he's not just talking about the Saylor case, he's talking about the Capitol case. It is incumbent on an attorney to go find out what is Lewis saying? What is he saying about both cases? Or is he only talking about the Cab case? And what is his basis of knowledge? Well, you don't think that Judge Terrell even indicated in his testimony at the habeas hearing that it had been his experience that inmate interviews were generally unproductive. But from Frazier, he knew that Frazier said that Lewis said that Melton was the shooter, your client was the shooter. And then you have the reference from Sumler saying that Lewis said the partner, his partner, was the shooter. You don't think that Terrell or defense counsel could reasonably infer from that that Melton was the partner given the fact that Melton was the partner with Lewis in the pawnshop robbery? Well, that would be essentially, I mean, I think what Terrell says is I should have gone and talked to him. I should have clarified who was he talking about. Now, the court and the state, you know, want to argue that that's hindsight. But at the end of the day, Terrell is, he was an experienced trial attorney. And he was a judge at the time he testified. And he said, I should have went and talked to him. Well, as the state court judge said, Terrell, understandably, seemed to try to admit lots of little things he should have done in the hearing. And the judge's task was not his own hindsight, but whether objectively looking at it, Terrell had made a mistake. Not what Terrell fessed up to later on, 20 years later. Okay. But what the trial court ignored in the district court was that Terrell said, I had no strategic or tactical reason not to go interview those witnesses. Now, the trial court tries to impose a reason saying, well, he, according to O'Neill, Lewis was giving statements that might have inculpated his client. But why wouldn't he have wanted to even know that? That's going to be used in a capital case against your client. You want to know what is being said by the co-defendant. You want to know what potential evidence is out there that could come in in either or both of those cases. So that is where he was deficient. What's your response to the argument that defense counsel doesn't have a responsibility to go talking to random people in a jail? I have no dispute with that. If this was not the context of this case, this case-by-case analysis that Strickland requires, under these facts, he had every obligation to go and find out what Lewis was saying and find out what the other people in the pod, because he knew Lewis is talking. So from there, he could have found additional witnesses the way post-conviction counsel found them. But they knew the identity of Sumler. So you're saying he should have at least talked to Sumler. Absolutely. And the thing about it is he went and talked to Frazier, but he didn't go talk to Sumler, which doesn't make sense because the note and the clarification O'Neill gives during the deposition makes it clear that Sumler is actually potentially a more helpful witness. He says, he didn't specifically say Melton, he said partner. And Terrell said that would be important to go and clarify that information and determine what exactly was being said, who is being implicated and what. By this point, well, let me ask you this. Assume for the sake of argument that we might say that was deficient performance. You still have a problem with prejudice because the question is what is the likelihood when Terrell goes to see Sumler that Sumler is going to say, oh, Lewis did it. And I would think you've got nothing on that because he told O'Neill that the partner did it, not Lewis. And he also said, I will never testify against Lewis. So what would be the likelihood that if defense counsel went to talk to him that he would then go back on that story? Well, he said that, I mean, when Sumler was finally interviewed, he said that Lewis said, my partner and I were there and he didn't say Melton. And then he indicated that it says in the notes, but it's way down at the bottom, he wouldn't testify against Lewis, but Lewis wasn't on trial for that crime. So to go to Sumler as an attorney for Melton and say, no one's asking you to testify against Lewis. You're coming in to explain to Melton's you heard. And he did, in fact, come in and he said, I don't recall even saying that back then, but, you know, maybe I did. But certainly there would be ways you could then subpoena him. You could then ask O'Neill, what did Sumler tell you? Because you could do what they did. That would be very dangerous unless he gets an admission. We're in so many degrees of speculation now. Unless he gets an admission from Sumler when he goes to talk to him that, oh, partner, he didn't say, he said not Melton, he said Houston, he specified. Partner by itself, if that's all you get, is very dangerous. Because then the next question is what does partner mean? And that arguably opens the door for the prosecution to say, well, what could partner mean? Well, the only time we know of a partner is the pawn shop property. And absolutely he wouldn't want to get into that. So it seems to me your argument is quite Well, but except for the fact that Sumler tells post-conviction counsel it wasn't Melton, it was Houston and Lewis. And the state court whose factual findings we have to defer to found him to be not credible. No, that was as to the newly discovered evidence claim. Under Porter v. McCollum, we're not talking about credibility. We're talking about what would the jury have gotten from those case or bolster the defense case. But my understanding of his finding of credibility is it's not even, we can't even be certain that had he been called to the stand, he would have, the judge goes on and on about all the inconsistencies. And of course, he indicated he'd never testify against Lewis. And you get to trial, that would essentially be testifying against Lewis to contradict him on something. He didn't indicate that in his testimony. But the judge found him not to be credible. As to the newly discovered evidence, this is what the respondent has done. They've conflated these claims. A newly discovered evidence claim is a forward-looking claim. What would happen at a future trial? That is legitimate to look at the credibility of a witness. But when you're looking at a backwards analysis, as in Strickland or Brady, like in Kyle's, we're seeing what would the evidence have done for the jury at the trial that they heard. They heard information about Lewis and about Houston. And the judge was more than that. He said they didn't come forward. They didn't come forward for 10 years, 12 years, whatever. I view his credibility finding is it's not even credible necessarily that he would have said this story had he been called to a trial. All the inmates said they had told nobody this story until two weeks before the hearing. And so the judge, it seemed to me, roundly rejected him in every way you can reject a witness on credibility grounds. Only as to the newly discovered evidence claim, that would be important. That does not apply in a Strickland analysis when we're looking at a backward-looking analysis as to how does this impact the trial that actually was heard and the defense that was actually presented. I see that I'm running out of time. Let me ask you another question before you sit down. How do you counter the state's point that you failed to show deficient performance because Terrell's co-counsel didn't testify at the evidentiary hearing? Well, because Judge Terrell said I was responsible for all of the strategic and tactical decisions. I was the lead counsel of the case. Therefore, he obviously, in order to make those decisions, if somebody did talk to him and he didn't find out about that information, then that would be similarly problematic. But the state didn't present Hall. Hall wasn't presented. Terrell made it clear this was my case. I made the decisions. I directed the investigation. And from what he did, he was the one who went and talked to Frazier and those sort of things. So I don't think there's any defect in the evidence that this is what he was trying to do at trial and this is the efforts he made. And we know what he didn't do. And he said, I didn't do those things. I should have done those things. And I didn't do them for any particular strategic or tactical decision. If I can reserve the rest of my time, please. Thank you, Ms. May. May it please the Court, Assistant Attorney General Charmaine Millsaps for respondent. I'd like to first talk about, I think not calling co-counsel Hall does matter. Absolutely. Judge Terrell testified that he was head of strategic decisions. He was lead counsel. But this is a claim of failure to investigate. We have absolutely no evidence that Hall didn't talk to these people or an investigator. What's more is not only could Hall have gone and talked to all these people, there is some record evidence suggesting that's exactly what happened. Because inmate Harris said somebody came to test it from the PD's office, quote unquote, and he refused to talk to him. So we know the investigation was wider than just what Terrell, what lead counsel Terrell did. He definitely was lead counsel and in And we know from this record that the investigation was broader than just what Terrell testified he did. We know that from inmate Harris, several of these inmates. But Harris is the one who specifically said someone from the PD's office. Now that could have been co-counsel Hall or it could have been one of the PD's investigators. But there is record evidence on this record that the scope of the investigation was broader. I'd also like to talk to Ms. Millicent. You mentioned the claim, the failure to investigate claim. Did I understand from your brief that you said there is no such thing as a failure to investigate claim? It's footnote three in your brief. Yes, Your Honor. Now, it's a first step to something. But courts should not be doing failure to investigate. It has to lead somewhere. I'm not saying you can't, it's not a precursor. But you can't have a freestanding failure to investigate. It has to affect the trial. You have to have found something that you say should have been presented. Okay? That's all I'm saying in that footnote, Your Honor. I'm not, I'm saying it's not. I mean, do you realize, I mean, you acknowledge that the Supreme Court has articulated a duty to investigate. Absolutely. I'm just saying it has to lead somewhere. Okay? You have to lead to admissible evidence. And the reason I'm pointing out that difference is I don't believe these inmates are admissible. I don't believe that the state courts are going to allow you to present as a defense witness. Remember, it's Houston, in this case, it's Houston that's the state's Ben Lewis. Ben Lewis was called as a defense witness. So you would have to have a trial in which a defense witness, you would allow multiple people to come to impeach a defense witness. Okay? So the, so I don't think you can do this. I don't think there's any admissible evidence here, is my point. The case that you cited in your brief about the evidence came after Mr. Melton's trial in 1992. Isn't that right? Yes, Your Honor. At the time of his trial, the Florida rule of evidence 90.608 permitted any person, including the party calling the witness, to attack the credibility of a witness. I believe you can attack the credibility of your own witness. I'm not saying he can't be impeached, but not with extrinsic evidence. We're not going to have a trial within a trial about a defense witness. Your Honor, and Lewis was impeached. He was massively impeached. But I don't believe they're going to allow you to call extra witnesses to impeach your own witness. Okay? It's not that you don't get to impeach your own witness. That did happen. Lewis was impeached numerous different ways, with his lying about an alibi, with his sworn testimony to the state attorneys, with his depo. Counsel got open admissions that he lied again and again and again. So, yes, you can impeach your own witness, and that happened. I do not believe you can call other people to impeach your own witness. All right. Before you move on, I just want to make sure we're on the same page about this. So my reading of the state court order does not address prejudice. Am I right about that? Do you agree with me about that? No, I don't think I do agree with that. Can you point me in the order where it does? Not the state court order. I think the finding of incredibility goes to the prejudice. That's what this is. If the trial judge doesn't believe him, why would the jury? Assuming you'd be allowed to do this, of course. But why would a jury believe these inmates who have multiple convictions? I guess Ms. McDermott's argument is that you're conflating the court's rulings on the newly discovered evidence. They didn't make the credibility findings in connection with the ineffective assistance of counsel. Credibility is credibility, Your Honor. He's saying he didn't believe them and gives the reasons why. And a jury, we would impeach these witnesses with the exact same thing that the trial court found, that they didn't come forward themselves, that it was years later. Let me just try this again. So we agree that the credibility findings that you're referring to were related to the newly discovered evidence. They were post-conviction findings. But in terms of the ineffective assistance of counsel claim, there was no separate analysis on prejudice. No. I took the trial court's order to mainly go toward the deficient performance and he just said random interviews. I think his main point was random interviews of inmates would not be productive. And so he rejected Terrell's testimony that he should have done this. But you know, just talking in terms of the deference owed on Anti-Terrorism Effective Death Penalty Act standards and if the state court didn't address it, then it would be de novo if we do address it. Oh, I don't believe that's true and here's why. The appellate court PCA'd this case. And that was the argument made to the appellate court. At the first DCA, I made arguments on both prongs. So I think we do have deference. There was no procedural hurdle. They reached the merits. Now, they just PCA'd, so I don't know which prong of Strickland they decided it on, but I can tell you both arguments were made. I made both a deficient performance and a no prejudice argument. So I don't think it is de novo, not under that situation. Now, Your Honor, I would like to point out a mistake in my brief. On page 55, I said Lewis was called at another evidentiary hearing regarding the Carter Capple case. I was actually referring to the evidentiary hearing in this case, the Saylor case. It was in 2014, Lewis reaffirmed his testimony in yet a third evidentiary hearing, which gets me to counsel's main point. She says the problem, the fundamental problem that the state courts made was they didn't consider the totality of the evidence, the evidence at trial, plus the evidence from post-conviction. I do not believe that Strickland puts counsel in the place where he was at the time of the trial. What people come forward later who say they would not talk to you at the time or newly discovered evidence claims, evidence from newly discovered evidence, cannot be considered. You must look at what counsel's position was at the time of trial. Now, can you consider what he should have found? Yes, of course you can. I'm not saying that, Your Honor. What I'm saying is, for instance, Sumler changed his testimony. Sumler's statement before trial, which is what counsel has, was his partner was the shooter, okay? But then Sumler in post-conviction changes his testimony. You can only consider what Lewis told him his partner shot the taxi cab driver. Admittedly, partner is ambiguous. It could be either Houston or Melton. The reason I think it's more likely Melton is because which one was his partner in the Carter case? Houston was at work. Houston, the state's main point is that Mr. Terrell never talked to Sumler. I mean, that's the point. Yes, absolutely. But we don't know. Hall didn't talk to Sumler. And what he had at the time was a statement from Sumler. I don't think when you get a statement from, first of all, Frazier, who you do talk to, says Melton was the shooter. That doesn't help you a bit. And then you get written reports from a detective saying another inmate is saying that Lewis says his partner shot the taxi cab driver. That doesn't help you either. Why would you go forward when the two pieces of evidence you have are that Lewis, who the state does not call as a witness, is telling other people that your client is the one who did it? Why would you go further and investigate other inmates from that? There's no red flag here. I disagree with there being a red flag. The two inmates, one of whom you talked to, one of whom you have notes about, and by you, I mean specifically Terrell. I don't even think that was bad for him not to go forward. But we don't know that they didn't go forward. You have to have Hall or the investigators. And it was incumbent on them. It's their burden to bring this person in who is doing the investigating and to indicate that he did not. You don't have to prove a negative. I don't have to prove a negative. And remember, Your Honor, in this particular case, this was really a surprise claim at the evidentiary hearing regarding these inmates. This was amended right before the hearing. So we didn't even really have the time to investigate this and objected on that grounds. The trial judge really agreed with us on that, but was afraid he would get reversed if he didn't allow them to do it. So this was a last minute claim. And the burden, Your Honor, that's not just empty language. The burden is seriously, they've always put the burden to overturn a valid conviction. You have the burden both of deficient performance and prejudice. But what's worse in this case, Your Honor, this is more than speculation. You would be reversing when some of the evidence in this hints that the investigation was in fact wider than either Frazier or Sumler. We know that Harris was talked to by somebody, by the PD, by his own testimony and refused to talk to them. So you have hints in this record. Wasn't Bird talked to also by an investigator according to his testimony? Your Honor, he said someone. I can't say that's the PD. Yes, Bird also said that. It's not, I hang my hat more on Harris because he specifically said PD. I don't know who someone would be other than the PD. His statement is much more ambiguous, Your Honor. But yes, he did say that. Somebody came to talk to him and he was worried about his own issues. And that's true of Brooks as well. And Brooks, Brooks wasn't even in this at the time of trial. Adrian Brooks, yes, everybody knew about him because Lewis had tried to get him to help form an alibi. But his later statements about what Houston told him before he died, counsel has, that conversation didn't even occur before trial. Couldn't have possibly found it. So a lot of this evidence is stuff that there's no way. She relies mainly on Bird, Adrian Brooks, and the girlfriend. And that's equally true of the girlfriend. Dobbs, what counsel is facing is the girlfriend's testimony at trial, not what she says later. You cannot correctly classify that as a recantation. She just says she doesn't have any independent regulation. But I don't care what it was. The minute somebody says recantation to you, unless that recantation occurred at trial, you simply should not consider that. Because when you look at counsel, it's the situation counsel's facing at the time of trial, with the expanded thing of what he should have known. But what the girlfriend testified at trial was all three of them were at her apartment and she walked out on a balcony and saw all three of them walking toward the Motel 6 and they called a cab to come pick them up. That's what he's facing. And that's what ineffectiveness must be premised on. You cannot, when witnesses years after the trial change their testimony and there's nothing there to hint that counsel could have gotten to that, then that evidence may not be considered. Okay. So really, I'd like to just go down on deficient performance. I think Florida law forbids you from calling these witnesses. Ms. Mills, just so you know, your time is up. We'll let you wind up. Okay. Random interviews are not constitutionally required. I agree you have to consider the two cases together. Counsel did a wonderful job at the penalty phase of using the fact that this was a conviction. Okay. And then I think that there's no prejudice, both because they're not credible and Ann Lewis was in fact impeached. And if there are no questions from the panel, thank you very much for your time. We ask that you affirm the district court's denial and the state court's denial of post-conviction relief and affirm the finding of no ineffectiveness of counsel. Thank you. Just to address a couple of things. Harris was a witness and he had statements from Lewis related to the Capitol case. And I do want to point out that we keep saying that Hall didn't testify, but Sumler testified and he said, no one ever came and saw me other than Detective O'Neill, who I gave my statement to. I assumed he would give that to whoever he needed to. So there is evidence in this record from these witnesses that no one came and spoke to them. But again, I got to beat a dead horse. The court found Sumler and the others to be incredible. Forget what analysis or what claim it is. He found them not to be credible. That's true as to the newly discovered evidence. I don't know. Forget what the claim is. He found whatever claim you want to say that Sumler was talking about, however you couch it as a lawyer, he found Sumler not to be credible. But if you're using that to try and say that the analysis was correct, that would be a unreasonable application of Strickland because Strickland doesn't look at an issue like that. In Porter, the court found that Porter's evidence lacked credibility. It could have been impeached. It wasn't sufficient to get him a new penalty phase. And what the U.S. Supreme Court said is, no, you cannot discount the evidence. You have to consider what impact it would have made on the jury. You have to think about how would the defense have used that. So when you look at Kyle's or you look at Chambers, in those cases, there's plenty of the person who comes forward and gives statements or does things that seem suspicious, Beeney and Kyle's and McDonald and Chambers, you get to put on the evidence about them in various ways from their inconsistent statements and things that they've done and told people. And there's no preclusion to that because this is part of Melton's defense, just like it was part of their defense to show the motive for how they got into this crime that they adamantly say, I wasn't involved in. And then so that would be the analysis is what could the attorney have done with this evidence? We're not going to get into. Of course, it could have been impeached. They had convictions. So did Lewis and Houston. They were facing the death penalty. And yet we're standing here saying that somebody who had a robbery charge hanging over his head can't be found credible. And these guys were facing the death penalty. And they got up there and they pointed the finger at Melton and they had all these inconsistent statements between them. They had Melton, they had them meeting up at different places. They had them, you know, Melton leaving the house of Mims house in the evening to dispose of the gun in the bag from Mr. Saylor. They had all sorts of inconsistencies. So that's why we have to look at what the jury heard, what this evidence would have done at the time of the trial. And if you look at what the jury knew, Mims, Marsh, Dobbins, Dobbins aunt, everybody says the crime happened Friday or one day before they read the newspaper article, which was Sunday. But what we know is that this crime happened Saturday. And we know that Houston and Melton and Lewis were talking about going to a club the night they were together. But they even asked Dobbins aunt, can you take us to the club? There's no explanation for why supposedly they changed gears and decided that they were going to commit a robbery. So I would ask the court to look at the evidence that was presented in post-conviction under the analysis that's appropriate to Strickland. And I would ask the court find that counsel was unreasonable in his investigation and that the state court unreasonably applied Strickland to the case and reverse. Thank you. Thank you, Ms. McDermott. That concludes our hearing for today. Thank you for your presentation.